IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT IN AND
FOR PINELLAS COUNTY, FLORIDA

CITY OF CLEARWATER, a Florida
governmental entity,

    Plaintiff,

Case No.: 2025-CA-004438

v.

STANTEC      CONSULTING
SERVICES INC., a foreign profit
corporation,

    Defendant.

_____/

Date: 8/20/25  Time: 1:00ⁿ

MCN #111
is a certified process server in the
Circuit and County Courts in and for the
Second Judicial Circuit

## SUMMONS ON COMPLAINT

THE STATE OF FLORIDA:

To Each Sheriff of the State:

    YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the
Complaint in this action on Defendant:

**STANTEC CONSULTING SERVICES INC.**
c/o Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301

    Defendant is hereby required to serve written defenses to the Complaint on Counsel, whose
name and address is:

TREVOR B. ARNOLD, ESQ.
MICHELE A. EBONE, ESQ.
GrayRobinson, P.A.
301 E. Pine Street, Suite 1400
Orlando, FL 32801
(407) 843-8880
trevor.arnold@gray-robinson.com
michele.ebone@gray-robinson.com
ylana.henderson@gray-robinson.com
lisandra.acosta@gray-robinson.com

**EXHIBIT A**

25-004438-CI

within twenty (20) days after service of this summons upon Defendant, exclusive of the day of service, and to file the original defenses with the Clerk of this Court either before service on Plaintiff, or immediately thereafter. If Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Third-Party Complaint.

## PERSONS WITH DISABILITIES IN PINELLAS COUNTY:

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact either the Pasco County Customer Service Center, 8731 Citizens Drive, New Port Richey, FL 34654, (727) 847-2411 (V) or the Pasco County Risk Management Office, 7536 State Street, New Port Richey, FL 34654, (727) 847-8028 (V) at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

WITNESS my hand and the seal of said Court on ___08/18/2025 11:58:18 AM___, 2025.

KEN BURKE, CLERK CIRCUIT COURT
315 Court Street
Clearwater, Pinellas County, FL 33756-5165

By: _Thomas Smith_
As Deputy Clerk

(Court Seal)

2

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA

Case No.

CITY OF CLEARWATER,

     Plaintiff,

v.

STANTEC    CONSULTING    SERVICES
INC.,

     Defendant.

_____/

## COMPLAINT

Plaintiff, CITY OF CLEARWATER, by and through undersigned counsel, hereby sues Defendant, STANTEC CONSULTING SERVICES INC. ("STANTEC"), and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     The CITY OF CLEARWATER is a municipal corporation organized and existing under the laws of the State of Florida.

2.     STANTEC is a New York corporation with its principal place of business in Edmonton, Alberta, Canada authorized to do business in the state of Florida.

3.     This Lawsuit arises out of the design and construction of the Imagine Clearwater Project (the "Project") on the property located at the Baycare Sound at Coachman Park, 255 Drew Street, Clearwater, Florida 33756 (the "Property").

4.     Venue is proper in Pinellas County, Florida, pursuant to Sections 47.011 and 47.051, Florida Statutes, because the acts forming the basis of this Complaint took place in Pinellas

County, Florida and the Project that is the subject matter of this action is located within Pinellas County.

5.      This is an action for damages that exceeds $50,000.00, exclusive of interest, costs, and expenses.

6.      Based on the amount in controversy, jurisdiction is proper in the Circuit Court of the Sixth Judicial Circuit located in Pinellas County, Florida.

**GENERAL ALLEGATIONS**

7.      The CITY OF CLEARWATER is the owner of the Property.

8.      The Project involved design and construction of the Imagine Clearwater Project, inclusive of design and related services for the Coachman Park band shell ("The Sound").

9.      STANTEC is licensed as a professional engineering firm in the state of Florida.

10.     The CITY OF CLEARWATER and STANTEC entered into a written agreement ("Agreement") whereby STANTEC agreed to provide certain design and professional engineering services for the improvement and construction of the Project. A copy of the Agreement is attached hereto as **Exhibit "A"**.

11.     Pursuant to the Agreement, STANTEC agreed to perform its services in a professional and workmanlike manner and in accordance with applicable industry standards, laws, and regulations.

12.     STANTEC did in fact prepare and submit design documents, plans, and specifications for the Project, and otherwise provided engineering and consulting services for the Project.

13.     On or about June of 2023, The Sound reached substantial completion.

14.     After implementation of STANTEC's designs and recommendations, significant defects and issues became apparent in the constructed improvements at The Sound, including but not limited to:

      a.      Overflow drains discharging during normal rain events;

      b.      Water entering the building from the loading dock;

      c.      Water entering the chair storage room;

      d.      Stormwater flow restrictions due to the force main in conflict blocking majority of the stormwater piping;

      e.      Canopy drains overflowing during normal rain events;

      f.      The building finished floor design elevation is the same as the exterior slab elevation, resulting in water intrusion; and

      g.      Failure to comply with the Florida Building Code.

15.     The deficiencies in the design and construction of The Sound have had significant impacts on the use of the structure.

16.     The CITY OF CLEARWATER issued a Notice of Claim Pursuant to Chapter 558, Florida Statues, and Demand for Indemnity ("558 Notice of Claim") to STANTEC on or about October 2, 2024.

17.     Since the issuance of the 558 Notice of Claim, the CITY OF CLEARWATER has attempted to resolve the issue with STANTEC.

18.     The CITY OF CLEARWATER has repeatedly requested STANTEC prepare and adhere to a comprehensive and actionable corrective plan, to include a schedule, for purposes of remediating the ongoing water-related drainage issues at the Project.

19.     On or about May 1, 2025, the CITY OF CLEARWATER requested a firm commitment from STANTEC to a comprehensive and actionable plan and schedule to remediate the ongoing water-related drainage issues at the Project, to be prepared by June 15, 2025.

20.     It was reiterated to all parties involved that time was of the essence, with hurricane season fast approaching.

21.     STANTEC failed to provide the requested comprehensive and actionable plan, to include a schedule, for purposes of remediating the ongoing water-related drainage issues at the Project by June 15, 2025.

22.     On or about July 18, 2025, the CITY OF CLEARWATER issued a Final Request for Remedial Action Plan to STANTEC, wherein the CITY OF CLEARWATER requested a comprehensive and actionable plan, to include a schedule, for purposes of remediating the ongoing water-related drainage issues at the Project with a deadline of July 25, 2025, warning that failure to comply could result in termination of the Contract.

23.     To date, STANTEC has not provided the CITY OF CLEARWATER with a comprehensive and actionable plan, to include a schedule, for purposes of remediating the ongoing water-related drainage issues at the Project.

24.     The CITY OF CLEARWATER has retained the undersigned law firm to represent it in this action and is obligated to pay a reasonable fee for the services rendered and costs incurred herein.

25.     The CITY OF CLEARWATER is entitled to recover its attorneys' fees and costs from STANTEC pursuant to the terms of the Agreement.

## COUNT I
### *BREACH OF CONTRACT*

26.    CITY OF CLEARWATER adopts and reincorporates Paragraphs 1 through 25 as though fully set forth herein.

27.    Pursuant to the Agreement, STANTEC was obligated to exercise reasonable care in rendering its design services for the Project in compliance with the Florida Building Code and professional industry standards, and without subjecting the CITY OF CLEARWATER to any liability for defects in rendering its services for the Project.

28.    STANTEC breached its duty by, without limitation, failing to design the Project in accordance with the applicable provisions of the Florida Building Code; failing to provide design documents free of defects; failing to properly review and respond to shop drawings and submittals; failing to prepare final construction documents of sufficiently high standard to clearly and accurately indicate all essential parts of work and failing to adhere to the prevailing professional standards of care.

29.    Moreover, pursuant to the requirements of the Agreement which STANTEC was required to comply with, STANTEC was obligated to indemnify the CITY OF CLEARWATER from and against "liabilities, damages, losses, and costs, including, but not limited to, reasonable attorneys' fees, to the extent caused by the negligence, recklessness, or intentionally wrongful conduct of [STANTEC]."[1]

30.    As of the date of this filing, STANTEC has not agreed to indemnify the CITY OF CLEARWATER.

---

[1] **Exhibit "A,"** § 6.6.

31.    As a direct and proximate result of STANTEC's breaches of the Agreement, the CITY OF CLEARWATER has suffered, and will continue to suffer, damages for which STANTEC is responsible, which include, without limitation, fees, charges, and expenses paid to consultants and other professionals, as well as attorneys' fees and other legal expenses.

32.    The CITY OF CLEARWATER is entitled to recover its liabilities, damages, losses and costs to include attorneys' fees and costs and consultants' fees from STANTEC pursuant to the Agreement, including Section 6.6 thereof.

WHEREFORE, the CITY OF CLEARWATER, respectfully requests this Court enter judgment against STANTEC CONSLTING SERVICES INC. and in favor of the CITY OF CLEARWATER, together with interest, attorneys' fees, costs, and any and all further relief the Court may deem proper.

## COUNT II
### *PROFESSIONAL NEGLIGENCE*

33.    CITY OF CLEARWATER adopts and reincorporates Paragraphs 1 through 25 as though fully set forth herein.

34.    This is an action for professional negligence against STANTEC.

35.    At all times material to, STANTEC assumed the obligation of providing professional engineering services for the Project.

36.    STANTEC had a duty to exercise reasonable care in rendering its services for the Project in compliance with the Florida Building Code and professional industry standards, and without subjecting the CITY OF CLEARWATER to any liability for defects in rendering its services for the Project.

37.    STANTEC breached its duty by, without limitation, failing to design the Project in accordance with the applicable provisions of the Florida Building Code; failing to provide design documents free of defects; failing to properly review and respond to shop drawings and submittals; failing to prepare final construction documents of sufficiently high standard to clearly and accurately indicate all essential parts of work and failing to adhere to the prevailing professional standards of care.

38.    As a direct and proximate result of the flawed services rendered by STANTEC, the CITY OF CLEARWATER has suffered damages.

39.    It was foreseeable to STANTEC that its failure to exercise the ordinary and reasonable skill and care of a professional engineer in Florida would result in damages to the CITY OF CLEARWATER.

WHEREFORE, the CITY OF CLEARWATER, respectfully requests this Court enter judgment against STANTEC CONSLTING SERVICES INC. and in favor of the CITY OF CLEARWATER, together with interest, attorneys' fees, costs, and any and all further relief the Court may deem proper.

## JURY TRIAL DEMAND

The CITY OF CLEARWATER demands a trial by jury on all issues so triable.

**Dated** this 13th day of August, 2025.

/s/ Trevor B. Arnold
**Trevor B. Arnold, Esquire**
Florida Bar No.: 545902
**Michele A. Ebone, Esquire**
Florida Bar No: 1003460
GRAYROBINSON, P.A.
301 E. Pine St., Ste. 1400
Orlando, FL 32801

(407) 843-8880
Fax: (407) 595-5690
trevor.arnold@gray-robinson.com
michele.ebone@gray-robinson.com
ylana.henderson@gray-robinson.com
*Counsel for Plaintiff, City of Clearwater*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of August, 2025, the foregoing was filed with the Florida Courts E-Filing Portal, pursuant to Fla. R. Gen. Prac. & Jud. Admin. 2.516, which will furnish a service copy to all counsel of record.

/s/ *Trevor B. Arnold*
Trevor B. Arnold, Esq.

EXHIBIT "A"

# AGREEMENT

# FOR

# PROFESSIONAL SERVICES

This AGREEMENT is made and entered into on the 8th day of February, 2011 by and between the City of Clearwater, Florida (CITY) and STANTEC CONSULTING SERVICES INC., 777 S. Harbour Island Boulevard, Suite 600, Tampa, FL 33602, ENGINEER.

## WITNESSETH:

WHEREAS the CITY desires to engage the ENGINEER to perform certain professional services pertinent to Imagine Clearwater Master Plan - Design and Construction Consulting Services, City Project Number 17-0031-EN, in accordance with this Agreement; and

WHEREAS the ENGINEER desires to provide such professional services in accordance with this Agreement; and

WHEREAS the CITY selected the ENGINEER in accordance with the competitive selection process described in Section 287.055 of the Florida Statutes, and based on information, representations, and response provided by the ENGINEER in Request For Qualifications (RFQ) #13-17 dated July 19, 2017; and

WHEREAS, such RFQ is incorporated herein by reference; and

NOW, THEREFORE, in consideration of the premises and the mutual benefits which will accrue to the parties hereto in carrying out the terms of this Agreement, it is mutually understood and agreed as follows:

## 1.0    GENERAL SCOPE OF THIS AGREEMENT

1.1    The recitals above are incorporated herein by reference. The relationship of the ENGINEER to the CITY will be that of a professional consultant, and the ENGINEER will provide the professional and technical services required under this Agreement in accordance with acceptable engineering practices and ethical standards.

1.2    In the event of conflicting or ambiguous provisions among the various documents related to this Agreement, the conflict or ambiguity should be resolved with deference to the documents in the following order: 1) this Agreement; 2) the Work Order(s); 3) the aforementioned RFQ and related addenda/documents; and then 4) the Engineer's response to the RFQ. Where this Agreement is afforded the most deference in resolving the conflict or ambiguity and the deferential value decreases as listed.

## 2.0    PROFESSIONAL TECHNICAL SERVICES

2.1    It shall be the responsibility of the ENGINEER to work with and for the CITY toward solutions to the assigned engineering matters associated with the CITY's project objectives related to the scope of the aforementioned RFQ.

2.2    The ENGINEER's services under this Agreement will be provided under Work Orders. Generally, each Work Order will include a mutually agreed-upon detailed scope of services, project goals, fee, and schedule of performance in accordance with applicable fiscal and budgetary constraints.  Each Work Order shall be properly authorized with regard to the cumulative cost of all Work Orders issued under this Agreement and with regard to the most recently authorized Work Order amount.

2.3    The ENGINEER agrees to perform the services with the reasonable skill and diligence required by customarily accepted professional practices and procedures normally provided in the performance of the services at the time when and the location in which the services were performed. This standard of care is the sole and exclusive standard of care that will be applied to measure the ENGINEER's performance.

2.4    The ENGINEER shall maintain an adequate and competent staff of professionally qualified personnel available to the CITY for the purpose of rendering the required services hereunder, and shall diligently execute the work to meet the completion time established in Work Order.

2.5    The CITY reserves the right to enter into contracts with other engineering and/or architect firms for complimentary services. The ENGINEER will, when directed to do so by the CITY, coordinate and work with other engineering and/or architectural firms retained by the CITY. Notwithstanding the foregoing, in no event shall the ENGINEER be responsible for quality assurance of the work of such other engineering and/or architect firms, nor shall the ENGINEER be liable for any errors or omissions in such work.

## 3.0    PERIOD OF SERVICE

3.1    The ENGINEER shall begin work promptly after receipt of a fully executed copy of each Work Order, in accordance with Paragraph 2.2 above.  Receipt of a fully executed Work Order shall constitute written notice to proceed.

3.2    If the ENGINEER'S services called for under any Work Order are delayed for reasons beyond the ENGINEER's control, the time of performance shall be adjusted as appropriate.

3.3    It is the intent of the parties hereto that this Agreement continue in force until the completion of work delineated in the aforementioned RFQ timeline, subject to the provisions for termination contained herein. Assignments that are in progress at the Contract termination date will be completed by the ENGINEER, unless specifically terminated by the CITY,

**4.0    INSURANCE REQUIREMENTS**

See Exhibit "A" attached.

**5.0    PROFESSIONAL SERVICES/CONSULTANT'S COMPETITIVE NEGOTIATION ACT (CCNA) - Florida Statue 287.055**

Professional Services provided under this Agreement are within the scope of the practice of architecture, landscape architecture, professional engineering, or registered land surveying, as defined by the laws of the State of Florida. Provisions of F.S. 287.055 apply.

**6.0    GENERAL CONSIDERATIONS**

6.1     All documents including field books, drawings, specifications, calculations, geotechnical investigation reports, etc., used in the preparation of the work shall be supplied by the ENGINEER and shall become the property of the CITY upon full payment of all monies owed to the ENGINEER for that specific work. The CITY acknowledges that such documents are not intended or represented to be suitable for use by the CITY or others for purposes other than those for which the documents are prepared. Any reuse of these documents without written verification or adaptation by the ENGINEER for the specific purpose other than intended will be at the CITY's sole risk, without liability or legal exposure to the ENGINEER.

6.2     The ENGINEER shall prepare preliminary construction cost estimates with each design submittal to verify the proposed design is within the City project budgets. The ENGINEER shall prepare a final estimate of probable construction costs, following CITY approval of the bid documents and other prebid activities. The CITY hereby acknowledges that estimates of probable construction costs cannot be guaranteed, and such estimates are not to be construed as a promise that designed facilities will not exceed a cost limitation. Should the lowest, responsive and acceptable bid price received by the CITY within three (3) months from the date of the CITY's approval of the bid documents exceed the provided final estimates, then ENGINEER shall perform a detailed evaluation of the low bid. The evaluation will review the bid prices on a line item basis, identifying areas of disagreement and providing a rationale for the difference.

6.3     The ENGINEER will provide expert witnesses, if required, to testify in connection with any lawsuit relating to the services rendered under this AGREEMENT, except to the extent a conflict of interest exists that would prevent the ENGINEER from providing expert witness services. A supplemental agreement will be negotiated between the CITY and the ENGINEER describing the services desired and providing a basis for compensation to the ENGINEER.

6.4     Upon the ENGINEER's written request, the CITY will furnish or cause to be furnished such reports, studies, instruments, documents, and other information as the ENGINEER and CITY mutually deem necessary.

[A04-01313 /21582171]

6.5.    The CITY and the ENGINEER each bind themselves and their successors, legal representatives and assigns to the other party to this Agreement and to the partners, successors, legal representatives and assigns of each other party, in respect to all covenants of this Agreement, and, neither the CITY nor the ENGINEER will assign or transfer its interest in this Agreement without written consent of the other.

6.6.    The ENGINEER shall indemnify and hold harmless the CITY, and its officers and employees, from liabilities, damages, losses, and costs, including, but not limited to, reasonable attorneys' fees, to the extent caused by the negligence, recklessness, or intentionally wrongful conduct of the ENGINEER and other persons employed or utilized by the ENGINEER in the performance of this AGREEMENT and any WORK ORDERS issued under this AGREEMENT.

6.7.    The ENGINEER agrees not to engage the services of any person or persons in the employ of the CITY in an allied capacity, on either a full or part-time basis, on the date of the signing of this Agreement, or during its term.

6.8.    Key personnel assigned to CITY projects by the ENGINEER shall not be removed from the projects until alternate personnel acceptable to the CITY are approved, in writing, by the CITY. Key personnel are identified as: Project Manager and technical experts.

6.9.    The ENGINEER shall attach a brief status report on the project(s) with each request for payment.

6.10.    Unless otherwise required by law or judicial order, the ENGINEER agrees that it shall make no statements, press releases or other public communication concerning the Agreement or its subject matter or otherwise disclose or permit to be disclosed any of the data, technical processes, business affairs or other information obtained or furnished in the conduct of work under this Agreement without first notifying the City and securing its consent in writing. The ENGINEER also agrees that it shall not publish, copyright or patent any of the site specific data or reports furnished for or resulting from work under this Agreement. This does not include materials previously or concurrently developed by the ENGINEER for "In House" use. Only data and reports generated by the ENGINEER under this Agreement shall be the property of the CITY.

6.11.    **PUBLIC RECORDS**

The successful bidder/contractor will be required to comply with Section 119.0701, Florida Statues, specifically to:

(a)    Keep and maintain public records that ordinarily and necessarily would be required by the City of Clearwater in order to perform the service;
(b)    Provide the public with access to public records on the same terms and conditions that the City of Clearwater would provide the records and at a cost that does not exceed the cost provided in this chapter or as otherwise provided by law;

(c) Ensure that public records that are exempt or confidential and exempt from public records disclosure requirements are not disclosed except as authorized by law; and

(d) Meet all requirements for retaining public records and transfer, at no cost, to the City of Clearwater all public records in possession of the contractor upon termination of the contract and destroy any duplicate public records that are exempt or confidential and exempt from public records disclosure requirements. All records stored electronically must be provided to the City of Clearwater in a format that is compatible with the information technology systems of the City of Clearwater. **IF ENGINEER HAS QUESTIONS REGARDING THE APPLICATION OF CHAPTER 119, FLORIDA STATUTES OR THE ENGINEER'S DUTY TO PROVIDE PUBLIC RECORDS RELATING TO THIS AGREEMENT, CONTACT THE CUSTODIAN OF PUBLIC RECORDS, Rosemarie Call at (727)562-4092, Rosemarie.Call@myclearwater.com, or 112 S. Osceola Ave., Clearwater, FL 33756.**

## 7.0 COMPENSATION

7.1 The ENGINEER shall be compensated for all services rendered under this Agreement in accordance with the provisions of each Work Order, upon presentation of ENGINEER's invoice. Rate schedule and typical methods of compensation will be evaluated on a per Work Order basis, and the CITY's commitment to pay for services proposed by a particular Work Order shall be at the CITY's sole discretion. ENGINEER understands that there is no minimum amount of work that the CITY is committing to pursuant to this Agreement or the aforementioned RFQ.

7.2 Except as may be addressed in the initiating Work Order, the compensation for services shall be invoiced by the ENGINEER and paid by the CITY once each month. Such invoices shall be due and payable upon receipt.

7.3 The ENGINEER agrees to allow full and open inspection of payroll records and expenditures in connection with hourly rate and cost plus fixed fee work assignments associated with each Work Order, upon request of the CITY. Notwithstanding the foregoing, the CITY's right to inspect, copy and audit shall not extend to the composition of the ENGINEER's rates and fees, percentage mark-ups or multipliers but shall apply only to their application to the applicable units.

## 8.0 PROHIBITION AGAINST CONTINGENT FEES

The ENGINEER warrants that it has not employed or retained any company or person, other than a bonafide employee working solely for the ENGINEER to solicit or secure this Agreement and that it has not paid or agreed to pay any persons, company, corporation, individual or firm, other than a bona fide employee working for the ENGINEER any fee, commission, percentage, gift, or any other consideration, contingent upon or resulting from the award or making of this Agreement.

## 9.0   TERMINATION FOR CAUSE

This Agreement may be terminated by either party with seven (7) days prior written notice, in the event of substantial failure to perform in accordance with the terms hereof by the other party through no fault of the terminating party. If this Agreement is terminated, the ENGINEER shall be paid in accordance with the provisions of outstanding Work Orders for all work performed up to the date of termination.

## 10.0   SUSPENSION, CANCELLATION OR ABANDONMENT

If the project described in any Work Order is suspended, canceled, or abandoned by the CITY, without affecting any other Work Order or this Agreement, the ENGINEER shall be given five (5) days prior written notice of such action and shall be compensated for professional services provided up to the date of suspension, cancellation or abandonment.

This Agreement shall be administered and interpreted under the laws of the State of Florida.

## 11.0   TERMINATION FOR CONVENIENCE

Either the CITY or the ENGINEER may terminate the Agreement at any time by giving written notice to the other of such termination and specifying the effective date of such termination at least thirty (30) days before said termination date. If the Agreement is terminated by the CITY as provided herein, the ENGINEER will be paid for services rendered through the date of termination.

## 12.0   PUBLIC ENTITY CRIMES

Pursuant to Florida Statute 287-132-133, effective July 1, 1989, the City of Clearwater, as a public entity, may not accept any proposal from, award any contract to, or transact any business in excess of the threshold amount provided in Section 287.017, F.S., for Category Two (currently $35,000) with any person or affiliate on the convicted vendor list for a period of 36 months from the date that person or affiliate was placed on the convicted vendor list unless that person or affiliate has been removed from the list pursuant to Section 287.133 (3)(f), F.S.

## 13.0   SCRUTINIZED COMPANIES AND BUSINESS OPERATIONS WITH CUBA AND SYRIA

The ENGINEER will be required to comply with Section 287.135, Florida Statutes, specifically to the following, attached hereto as Exhibit "B":

(a)   The vendor, company, individual, principal, subsidiary, affiliate, or owner is aware of the requirements of section 287.135, Florida Statutes, regarding companies on the Scrutinized Companies with Activities in Sudan List, the Scrutinized Companies with Activities in the Iran Petroleum Energy Sector List, or engaging in business operations in Cuba and Syria; and

(b)    The vendor, company, individual, principal, subsidiary, affiliate, or owner is eligible to participate in this solicitation and is not listed on either the Scrutinized Companies with Activities in Sudan List, the Scrutinized Companies with Activities in the Iran Petroleum Sector List, or engaged in business operations in Cuba and Syria; and

(c)    Business Operations means, for purposes specifically related to Cuba or Syria engaging in commerce in any form in Cuba or Syria, including, but not limited to, acquiring, developing, maintaining, owning, selling, possessing, leasing or operating equipment, facilities, personnel, products, services, personal property, real property, military equipment, or any other apparatus of business or commerce; and

(d)    The vendor, company, individual, principal, subsidiary, affiliate, or owner will immediately notify the City of Clearwater in writing, no later than five (5) calendar days after any of its principals are placed on the Scrutinized Companies with Activities in Sudan List, the Scrutinized Companies with Activities in the Iran Petroleum Sector List, or engages in business operations in Cuba and Syria.

## 14.0    LIMITATION OF INDIVIDUAL LIABILITY AND WAIVER OF CONSEQUENTIAL DAMAGES

14.1    Neither the CITY nor the ENGINEER shall be liable to the other or shall make any claim for any incidental, indirect or consequential damages arising out of or connected to this Agreement or the performance of the services on this Project. This mutual waiver includes, but is not limited to, damages related to loss of use, loss of profits, loss of income, unrealized energy savings, diminution of property value or loss of reimbursement or credits from governmental or other agencies.

14.2    **PURSUANT TO FLORIDA STATUTES CHAPTER 558.0035 AN INDIVIDUAL EMPLOYEE OR AGENT MAY NOT BE HELD INDIVIDUALLY LIABLE FOR DAMAGES RESULTING FROM NEGLIGENCE.**

IN WITNESS WHEREOF, the parties hereto have made and executed this Agreement on the date and year first above written.

Stantec Consulting Services, Inc.

By: _____
David A. Kemper, P.E.
Senior Principal

WITNESS:

By: _____
Hamid Sahebkar, P.E.
Principal

CITY OF CLEARWATER

By: _____
William B. Horne II
City Manager

ATTEST:

By: _____
Rosemarie Call
City Clerk

Countersigned:
_____
George N. Cretekos
Mayor

Approved as to form and correctness:
_____
Assistant City Attorney

# EXHIBIT "A"
## INSURANCE REQUIREMENTS
## FOR
## AGREEMENTS AND CONTRACTS

In addition to any other insurance required by the RFQ, or bid documents, the Respondent shall, at its own cost and expense, acquire and maintain (and cause any contractors and/or subcontractors to acquire and maintain) during the term with the CITY, sufficient insurance to adequately protect the respective interest of the parties. Coverage shall be obtained with a carrier having an AM Best Rating of A-V11 or better.   In addition, the CITY has the right to review the Respondent's deductible or self-insured retention and require that it be reduced or eliminated.

Specifically the Respondent must carry the following minimum types and amounts of insurance on an occurrence basis or in the case of coverage that cannot be obtained on an occurrence basis, then coverage can be obtained on a claims-made basis with a minimum three (3) year tail following the termination or expiration of this Agreement:

   a.  **Commercial General Liability Insurance** coverage in the minimum amount of $1,000,000 per occurrence and $2,000,000 general aggregate.
   b.  **Commercial Automobile Liability Insurance** coverage for any owned, non-owned, hired or borrowed automobile is required in the minimum amount of $1,000,000 (one million dollars) combined single limit.
   c.  Unless waived by the State of Florida, statutory **Workers' Compensation Insurance** coverage in accordance with the laws of the State of Florida, and **Employer's Liability Insurance** in the minimum amount of $100,000 each employee each accident, $100,000 each employee by disease and $500,000 aggregate by disease with benefits afforded under the laws of the State of Florida.  Coverage should include Voluntary Compensation, Jones Act, and U.S. Longshoremen's and Harbor Worker's Act coverage where applicable. Coverage must be applicable to employees, contractors, subcontractors, and volunteers, if any.
   d.  **Professional Liability/Malpractice/Errors or Omissions Insurance** coverage appropriate for the type of business engaged in by the Respondent with minimum limits of $1,000,000 per claim.  If a claims made form of coverage is provided, the retroactive date of coverage shall be no later than the inception date of claims made coverage, unless prior policy was extended indefinitely to cover prior acts.  Coverage shall be extended beyond the policy year either by a supplemental extended reporting period (ERP) of as great a duration as available, and with no less coverage and with reinstated aggregate limits, or by requiring that any new policy provide a retroactive date no later than the inception date of claims made coverage.
   e.  If the Respondent is using its own property or the property of City in connection with the performance of its obligations under this Agreement, the **Property Insurance** on an "All Risks" basis with replacement cost coverage for property and equipment in the care, custody and control of others is required.

The above insurance limits may be achieved by a combination of primary and umbrella/excess liability policies.

**OTHER INSURANCE PROVISIONS:**

a. The City is to be specifically included as an "Additional Insured" on the Commercial Liability Insurance and Commercial Auto Liability, and named as a "Loss Payee" on Respondent's Property Insurance policy.

b. Prior to the execution of this Agreement, and then annually upon the anniversary date(s) of the insurance policy's renewal date(s), the Respondent will furnish the City with a Certificate of Insurance evidencing the coverage set forth above and naming the City as an "Additional Insured." In addition, when requested in writing from the City, Respondent will provide the City with certified copies of all applicable policies. The address where such certificates and certified policies shall be sent or delivered is as follows:

> **City of Clearwater**
> **Engineering Department**
> **P.O. Box 4748**
> **Clearwater, FL  33758-4748**

c. Respondent shall provide thirty (30) days written notice of any cancellation, non-renewal, termination, material change or reduction in coverage.

d. Respondent's insurance as outlined above shall be primary and non-contributory coverage for Respondent's negligence.

e. Respondent shall defend, indemnify, save and hold the City harmless from any and all claims, suits, judgments and liability for death, personal injury, bodily injury, or property damage arising directly or indirectly including legal fees, court costs, or other legal expenses.

The stipulated limits of coverage above shall not be construed as a limitation of any potential liability to the City, and failure to request evidence of this insurance shall not be construed as a waiver of Respondent's obligation to provide the insurance coverage specified.

## EXHIBIT "B"

## SCRUTINIZED COMPANIES AND BUSINESS OPERATIONS WITH CUBA AND SYRIA CERTIFICATION FORM

The affiant, by virtue of the signature below, certifies that:

1.  The vendor, company, individual, principal, subsidiary, affiliate, or owner is aware of the requirements of section 287.135, Florida Statutes, regarding companies on the Scrutinized Companies with Activities in Sudan List, the Scrutinized Companies with Activities in the Iran Petroleum Energy Sector List, or engaging in business operations in Cuba and Syria; and

2.  The vendor, company, individual, principal, subsidiary, affiliate, or owner is eligible to participate in this solicitation and is not listed on either the Scrutinized Companies with Activities in Sudan List, the Scrutinized Companies with Activities in the Iran Petroleum Sector List, or engaged in business operations in Cuba and Syria; and

3.  Business Operations means, for purposes specifically related to Cuba or Syria, engaging in commerce in any form in Cuba or Syria, including, but not limited to, acquiring, developing, maintaining, owning, selling, possessing, leasing or operating equipment, facilities, personnel, products, services, personal property, real property, military equipment, or any other apparatus of business or commerce; and

4.  If awarded the Contract (or Agreement), the vendor, company, individual, principal, subsidiary, affiliate, or owner will immediately notify the City of Clearwater in writing, no later than five (5) calendar days after any of its principals are placed on the Scrutinized Companies with Activities in Sudan List, the Scrutinized Companies with Activities in the Iran Petroleum Sector List, or engages in business operations in Cuba and Syria.

_____
Authorized Signature

David A. Kemper, P.E.
Printed Name

Senior Principal
Title

Stantec Consulting Services Inc.
Name of Entity/Corporation

STATE OF FLORIDA
COUNTY OF Hillsborough

The foregoing instrument was acknowledged before me on this 23rd day of January 20 18 by David A Kemper (name of person whose signature is being notarized) as the Senior Principal (title) of Stantec Consulting Services Inc. (name of corporation/entity), personally known to me as described herein SELF or produced a NA (type of identification) as identification, and who did/did not take an oath.

_____
Notary Public

Robin J. Law
Printed Name

My Commission Expires: October 11, 2021
NOTARY SEAL ABOVE

[A04-0313 /21582]/1]

Filing # 229335013 E-Filed 08/13/2025 12:54:46 PM

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT IN AND
FOR PINELLAS COUNTY, FLORIDA

CITY OF CLEARWATER, a Florida
governmental entity,

          Plaintiff,

Case No.:

v.

STANTEC        CONSULTING
SERVICES INC., a foreign profit
corporation,

         Defendant.

_____/

## GENERAL CASE STANDING ORDER

All civil actions, except those enumerated in Fla. R. Civ. P. 1.200(a), must be assigned one of three case management tracks within **120 days** after the action is filed: streamlined, general, or complex. *See* Fla. R. Civ. P. 1.200(b). NOTE: The parties must comply with Fla. R. Civ. P. 1.201 to designate the action as "complex." **Plaintiff(s), or Plaintiff(s)'s counsel, must file and serve this Standing Order upon all named Defendant(s) or Defendant(s)'s counsel with the summons and complaint.**

## CASE TRACK ASSIGNMENT: GENERAL

| DEFINITION: | PROJECTED TRIAL DATE: |
|---|---|
| All other civil actions that do not meet the criteria for "complex" or "streamlined" cases. | 18 months after the action is filed. *See* Fla. R. Civ. P. 1.440. |

## DEADLINES:

The parties are subject to a continuing duty to **MEET AND CONFER** regarding the projected deadlines established by this Order. ***All deadlines established by this Order must be strictly enforced and can only be changed by court order***. If a party is unable to meet the established case management deadlines, the party must notify the Court within a reasonable time. Any request to change the overall case track assignment must be filed promptly after the appearance of good cause to support the motion. To modify the terms of this Order, the parties may: (1) submit an agreed order to the Court to extend a deadline; or (2) file a motion in accordance with Fla. R. Civ. P. 1.200(e)(3)(A)-(D) seeking leave of Court to extend a deadline, modify this Order, or alter a projected trial period. To schedule an actual trial date, the parties must cooperate

with the Court according to its practice preferences. To alter an actual trial period, the parties must satisfy the requirements of Fla. R. Civ. P. 1.460.

| CATEGORY: | GENERAL CASE DEADLINES: |
|---|---|
| **Service of Complaint** | 120 days after the action is filed. *See* Fla. R. Civ. P. 1.070(j). |
| **Service under Extension** | Deadlines for extensions to serve process upon defendants are at the discretion of the trial judge. *See* Fla. R. Civ. P. 1.070(j). |
| **Pre-Trial Conference** | To be scheduled pursuant to the trial judge's practice preferences. |
| **Schedule a Trial Date** | 8 months after the action is filed. *See* Fla. R. Civ. P. 1.440. |
| **Adding New Parties** | Deadline for adding new parties is at the discretion of the trial judge. *See* Fla. R. Civ. P. 1.070(j); *see also* Fla. R. Civ. P. 1.190. |
| **Completion of Fact Discovery** | 30 days before the pre-trial conference. |
| **Completion of Expert Discovery** | 30 days before the pre-trial conference. |
| **Filing and Service of Motions for Summary Judgment** | File and serve 60 days before the pre-trial conference. Must be heard prior to the pre-trial conference. |
| **Filing and Resolution of All Objections to Pleadings** | Before the pre-trial conference. |
| **Filing and Resolution of All Pretrial Motions** | Before the pre-trial conference. |
| **Completion of Alternative Dispute Resolution,** including Non-Binding Arbitration and Mediation | Before the pre-trial conference. |

**THEREFORE, it is ORDERED and ADJUDGED** in the Sixth Judicial Circuit, Florida, this _____ day of _____, 20___:

The above-styled case is designated as **GENERAL** with a projected trial date of **18 MONTHS AFTER THE ACTION IS FILED**, and all parties must abide by the corresponding deadlines.

*Effective per*
*Admin. Order*
*2025-006 PA/PI-*
*CIR*

Shawn Crane, Chief Judge

3