**GRAY ROBINSON**

Trevor B. Arnold, Esq., B.C.S.  | Chair, Construction  | Trevor.Arnold@gray-robinson.com  | **D** 407.244.5692
301 East Pine Street, Suite 1400, Orlando, Florida  32801  | **T** 407.843.8880  | **F** 407.244.5690



October 2, 2024

**<u>VIA CERTIFIED MAIL</u>**
Stantec Consulting Services Inc.
410 17th Street, Suite 1400
Denver, CO 80202

Corporation Service Company, *as registered agent*
1201 Hays Street
Tallahassee, FL 32301

Gordon A. Johnston, President
Stantec Consulting Services Inc.
10220 – 103 Avenue NW, Suite 300
Edmonton, T5J 0K4 Canada

    Re:    **Notice of Claim Pursuant to Chapter 558, *Florida Statutes*, and Demand for Indemnity**
             Imagine Clearwater Project
             The BayCare Sound at Coachman Park
             255 Drew Street
             Clearwater, Florida 33756

To Whom It May Concern:

    Our law firm represents the City of Clearwater regarding the Imagine Clearwater Project (the "Project'). As you know, on or about January 23, 2019, Stantec Consulting Services Inc. ("Stantec") entered into an agreement (the "Contract') with the City for Stantec to provide design services for the Project, which included design and related services for the Coachman Park band shell ("The Sound").  *See* Contract, attached and incorporated hereto as **Exhibit "A"**.  As a result of design and construction deficiencies, severe water intrusion and related issues are preventing The Sound and its adjacent areas to operate as intended.

    ***The City's 558 Notice of Claim***

    Accordingly, this correspondence serves as the City's Notice of Claim of Construction Defects (the "Notice of Claim"), pursuant to Section 558.004, *Florida Statute*s.  On site investigations have revealed several design issues affecting The Sound.  Generally the issues include, but are not limited to:

    a)  Overflow drains discharging during normal rain events;

    b)  Water entering the building from the loading dock;



October 2, 2024
Page 2

    c) Water entering the chair storage room;

    d) Stormwater flow restrictions due to the force main in conflict blocking majority of the stormwater piping;

    e) Canopy drains overflowing during normal rain events;

    f) The building finished floor design elevation is the same as the exterior slab elevation, resulting in water intrusion; and

    g) Failure to comply with the Florida Building Code has prevented a certificate of occupancy from being issued.

The City's investigation regarding defects and damages is ongoing. The City reserves the right to supplement this correspondence as investigation continues.

Within thirty (30) days of receiving this Notice of Claim, Stantec must provide a copy of this Notice to any and all contractors, subcontractors, suppliers, design professionals, and consultants whom Stantec reasonably believes may be responsible for the issues noted herein. Immediately thereafter, please provide our office with the identity of each subcontractor, supplier, design professional, and/or consultant that Stantec used for the Project, the scope of work for each individual or entity identified, and a copy of the relevant subcontract or agreement.

### *The City's Demand for Indemnity*

In conjunction with this Notice of Claim, please allow this correspondence to serve as the City's demand for indemnity to Stantec. Pursuant to Section 6.6 of the Contract, Stantec agreed to indemnify the City from all damages and costs caused by Stantec's negligent performance of its work on the Project. See below.

> 6.6 The ENGINEER shall indemnify and hold harmless the CITY, and its officers and employees, from liabilities, damages, losses, and costs, including, but not limited to, reasonable attorneys' fees, to the extent caused by the negligence, recklessness, or intentionally wrongful conduct of the ENGINEER and other persons employed or utilized by the ENGINEER in the performance of this AGREEMENT and any WORK ORDERS issued under this AGREEMENT.

### *Stantec's Written Response*

Stantec must provide the City with a written response to this Notice of Claim within forty-five (45) days of receiving this Notice. Pursuant to Section 558.004, *Florida Statutes*, the written response must provide the following:

    a) A written offer to remedy the alleged construction defect at no cost to the claimant, a detailed description of the proposed repairs necessary to remedy the defect, and a timetable for the completion of such repairs;

    b) A written offer to compromise and settle the claim by monetary payment that will not obligate the person's insurer and a timetable for making payments;

 c) A written offer to compromise and settle the claim by a combination of repairs and monetary payment, that will not obligate the person's insurer, that includes a detailed description of the proposed repairs and a timetable for the completion of such repairs and making payments;

 d) A written statement that the person disputes the claim and will not remedy the defect or compromise and settle the claim; or

 e) A written statement that a monetary payment, including insurance proceeds, if any, will be determined by the person's insurer within thirty (30) days after notification to the insurer by means of serving the claim, which service shall occur at the same time the claimant is notified of this settlement option, which the claimant may accept or reject. A written statement under this paragraph may also include an offer under paragraph c) above, but such offer shall be contingent upon the claimant also accepting the determination of the insurer whether to make any monetary payment in addition thereto. If the insurer for the person served with the claim makes no response within the thirty (30) days following service, then the claimant shall be deemed to have met all conditions precedent to commencing an action.

### *Request for Insurance Information*

Pursuant to Section 627.4137, *Florida Statutes,* Stantec is also required to provide a copy of this letter to each of its liability insurers, who then must issue a statement within thirty (30) days, under oath, from a corporate officer or the insurer's claims manager or superintendent, setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance:

 a) The name of the insurer;

 b) The name of each insured;

 c) The limits of the liability coverage;

 d) A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement; and

 e) A copy of the policy.

### *Site Inspection*

Pursuant to Section 558.004, *Florida Statutes,* Stantec may contact undersigned counsel to schedule a mutually convenient time, within thirty (30) days of this Notice, to inspect The Sound and related areas.

### *Request to Preserve Documents*

Stantec is hereby notified not to destroy, conceal, or alter any paper or electronic files, or other information generated by and/or stored on a computer system or storage media, in its possession, custody, or control, including the possession, custody, and control of affiliated companies that were involved in the Project in any manner. The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Accordingly, Stantec must take every reasonable step to preserve documents and information until final resolution of this matter. Stantec has an obligation to discontinue all routine document and data destruction. Stantec should also save all documents and electronic data created after it receives this correspondence.

*Conclusion*

The City has incurred and will incur substantial damages from the defective design and construction of The Sound and adjacent areas, including but not limited to, costs incurred and to be incurred in investigating the defects and deficiencies at The Sound, costs incurred and to be incurred for repairing and remediating The Sound; loss of use and enjoyment of The Sound; lost profits; costs incurred and to be incurred for additional City time and labor to assist, manage, and conduct investigative, repair, and remediation efforts; consequential damages; prejudgment interest; and attorney's fees and costs.

As previously mentioned, please advise if Stantec requests to inspect The Sound and adjacent areas. Please also advise of Stantec's position with respect to the issues set forth herein, including its position on the City's tender of indemnity, within 45 days of receipt of this correspondence. Please feel free to contact us to further discuss this matter.

Sincerely,

Trevor B. Arnold, B.C.S.

TBA/NKB

Enclosures

cc:  Nikki K. Bhavsar (Nikki.Bhavsar@gray-robinson.com)
     David A. Kemper (David.Kemper@stantec.com)

EXHIBIT "A"

# AGREEMENT

# FOR

# PROFESSIONAL SERVICES

This AGREEMENT is made and entered into on the __6th__ day of __February__, 20__18__ by and between the City of Clearwater, Florida (CITY) and STANTEC CONSULTING SERVICES INC., 777 S. Harbour Island Boulevard, Suite 600, Tampa, FL 33602, ENGINEER.

**WITNESSETH:**

WHEREAS the CITY desires to engage the ENGINEER to perform certain professional services pertinent to Imagine Clearwater Master Plan - Design and Construction Consulting Services: City Project Number 17-0031-EN, in accordance with this Agreement; and

WHEREAS the ENGINEER desires to provide such professional services in accordance with this Agreement; and

WHEREAS the CITY selected the ENGINEER in accordance with the competitive selection process described in Section 287.055 of the Florida Statutes, and based on information, representations, and response provided by the ENGINEER in Request For Qualifications (RFQ) #13-17 dated July 19, 2017; and

WHEREAS, such RFQ is incorporated herein by reference; and

NOW, THEREFORE, in consideration of the premises and the mutual benefits which will accrue to the parties hereto in carrying out the terms of this Agreement, it is mutually understood and agreed as follows:

**1.0 GENERAL SCOPE OF THIS AGREEMENT**

1.1   The recitals above are incorporated herein by reference. The relationship of the ENGINEER to the CITY will be that of a professional consultant, and the ENGINEER will provide the professional and technical services required under this Agreement in accordance with acceptable engineering practices and ethical standards.

1.2   In the event of conflicting or ambiguous provisions among the various documents related to this Agreement, the conflict or ambiguity should be resolved with deference to the documents in the following order: 1) this Agreement, 2) the Work Order(s), 3) the aforementioned RFQ and related addenda/documents, and then 4) the Engineer's response to the RFQ. Where this Agreement is afforded the most deference in resolving the conflict or ambiguity and the deferential value decreases as listed.

**2.0   PROFESSIONAL TECHNICAL SERVICES**

2.1   It shall be the responsibility of the ENGINEER to work with and for the CITY toward solutions to the assigned engineering matters associated with the CITY's project objectives related to the scope of the aforementioned RFQ.

2.2   The ENGINEER's services under this Agreement will be provided under Work Orders. Generally, each Work Order will include a mutually agreed-upon detailed scope of services, project goals, fee, and schedule of performance in accordance with applicable fiscal and budgetary constraints. Each Work Order shall be properly authorized with regard to the cumulative cost of all Work Orders issued under this Agreement and with regard to the most recently authorized Work Order amount.

2.3   The ENGINEER agrees to perform the services with the reasonable skill and diligence required by customarily accepted professional practices and procedures normally provided in the performance of the services at the time when and the location in which the services were performed. This standard of care is the sole and exclusive standard of care that will be applied to measure the ENGINEER's performance.

2.4   The ENGINEER shall maintain an adequate and competent staff of professionally qualified personnel available to the CITY for the purpose of rendering the required services hereunder, and shall diligently execute the work to meet the completion time established in Work Order.

2.5   The CITY reserves the right to enter into contracts with other engineering and/or architect firms for complimentary services. The ENGINEER will, when directed to do so by the CITY, coordinate and work with other engineering and/or architectural firms retained by the CITY. Notwithstanding the foregoing, in no event shall the ENGINEER be responsible for quality assurance of the work of such other engineering and/or architect firms, nor shall the ENGINEER be liable for any errors or omissions in such work.

**3.0   PERIOD OF SERVICE**

3.1   The ENGINEER shall begin work promptly after receipt of a fully executed copy of each Work Order, in accordance with Paragraph 2.2, above. Receipt of a fully executed Work Order shall constitute written notice to proceed.

3.2   If the ENGINEER'S services called for under any Work Order are delayed for reasons beyond the ENGINEER's control, the time of performance shall be adjusted as appropriate.

3.3   It is the intent of the parties hereto that this Agreement continue in force until the completion of work delineated in the aforementioned RFQ timeline, subject to the provisions for termination contained herein. Assignments that are in progress at the Contract termination date will be completed by the ENGINEER, unless specifically terminated by the CITY.

[A04-01313  /215821/1]

4.0 **INSURANCE REQUIREMENTS**

See Exhibit "A" attached.

5.0 **PROFESSIONAL SERVICES/CONSULTANT'S COMPETITIVE NEGOTIATION ACT (CCNA) - Florida Statue 287.055**

Professional Services provided under this Agreement are within the scope of the practice of architecture, landscape architecture, professional engineering, or registered land surveying, as defined by the laws of the State of Florida. Provisions of F.S. 287.055 apply.

6.0 **GENERAL CONSIDERATIONS**

6.1 All documents including field books, drawings, specifications, calculations, geotechnical investigation reports, etc., used in the preparation of the work shall be supplied by the ENGINEER and shall become the property of the CITY upon full payment of all monies owed to the ENGINEER for that specific work. The CITY acknowledges that such documents are not intended or represented to be suitable for use by the CITY or others for purposes other than those for which the documents are prepared. Any reuse of these documents without written verification or adaptation by the ENGINEER for the specific purpose other than intended will be at the CITY's sole risk, without liability or legal exposure to the ENGINEER.

6.2 The ENGINEER shall prepare preliminary construction cost estimates with each design submittal to verify the proposed design is within the City project budgets. The ENGINEER shall prepare a final estimate of probable construction costs, following CITY approval of the bid documents and other prebid activities. The CITY hereby acknowledges that estimates of probable construction costs cannot be guaranteed, and such estimates are not to be construed as a promise that designed facilities will not exceed a cost limitation. Should the lowest, responsive and acceptable bid price received by the CITY within three (3) months from the date of the CITY's approval of the bid documents exceed the provided final estimates, then ENGINEER shall perform a detailed evaluation of the low bid. The evaluation will review the bid prices on a line item basis, identifying areas of disagreement and providing a rationale for the difference.

6.3 The ENGINEER will provide expert witnesses, if required, to testify in connection with any lawsuit relating to the services rendered under this AGREEMENT, except to the extent a conflict of interest exists that would prevent the ENGINEER from providing expert witness services. A supplemental agreement will be negotiated between the CITY and the ENGINEER describing the services desired and providing a basis for compensation to the ENGINEER.

6.4 Upon the ENGINEER's written request, the CITY will furnish or cause to be furnished such reports, studies, instruments, documents, and other information as the ENGINEER and CITY mutually deem necessary.

[A04-01313 /215821/1]

6.5    The CITY and the ENGINEER each bind themselves and their successors, legal representatives and assigns to the other party to this Agreement and to the partners, successors, legal representatives and assigns of each other party, in respect to all covenants of this Agreement; and, neither the CITY nor the ENGINEER will assign or transfer its interest in this Agreement without written consent of the other.

6.6    The ENGINEER shall indemnify and hold harmless the CITY, and its officers and employees, from liabilities, damages, losses, and costs, including, but not limited to, reasonable attorneys' fees, to the extent caused by the negligence, recklessness, or intentionally wrongful conduct of the ENGINEER and other persons employed or utilized by the ENGINEER in the performance of this AGREEMENT and any WORK ORDERS issued under this AGREEMENT.

6.7    The ENGINEER agrees not to engage the services of any person or persons in the employ of the CITY to an allied capacity, on either a full or part-time basis, on the date of the signing of this Agreement, or during its term.

6.8    Key personnel assigned to CITY projects by the ENGINEER shall not be removed from the projects until alternate personnel acceptable to the CITY are approved, in writing, by the CITY.  Key personnel are identified as: Project Manager and technical experts.

6.9    The ENGINEER shall attach a brief status report on the project(s) with each request for payment.

6.10    Unless otherwise required by law or judicial order, the ENGINEER agrees that it shall make no statements, press releases or other public communication concerning the Agreement or its subject matter or otherwise disclose or permit to be disclosed any of the data, technical processes, business affairs or other information obtained or furnished in the conduct of work under this Agreement without first notifying the City and securing its consent in writing. The ENGINEER also agrees that it shall not publish, copyright or patent any of the site specific data or reports furnished for or resulting from work under this Agreement. This does not include materials previously or concurrently developed by the ENGINEER for "In House" use. Only data and reports generated by the ENGINEER under this Agreement shall be the property of the CITY.

6.11    **PUBLIC RECORDS**

The successful bidder/contractor will be required to comply with Section 119.0701, Florida Statues , specifically to:

(a)    Keep and maintain public records that ordinarily and necessarily would be required by the City of Clearwater in order to perform the service;
(b)    Provide the public with access to public records on the same terms and conditions that the City of Clearwater would provide the records and at a cost that does not exceed the cost provided in this chapter or as otherwise provided by law;

(c) Ensure that public records that are exempt or confidential and exempt from public records disclosure requirements are not disclosed except as authorized by law; and

(d) Meet all requirements for retaining public records and transfer, at no cost, to the City of Clearwater all public records in possession of the contractor upon termination of the contract and destroy any duplicate public records that are exempt or confidential and exempt from public records disclosure requirements. All records stored electronically must be provided to the City of Clearwater in a format that is compatible with the information technology systems of the City of Clearwater.
**IF ENGINEER HAS QUESTIONS REGARDING THE APPLICATION OF CHAPTER 119, FLORIDA STATUTES OR THE ENGINEER'S DUTY TO PROVIDE PUBLIC RECORDS RELATING TO THIS AGREEMENT, CONTACT THE CUSTODIAN OF PUBLIC RECORDS, Rosemarie Call at (727)562-4092, Rosemarie.Call@myclearwater,com, or 112 S. Osceola Ave., Clearwater, FL 33756.**

## 7.0 COMPENSATION

7.1 The ENGINEER shall be compensated for all services rendered under this Agreement in accordance with the provisions of each Work Order, upon presentation of ENGINEER's invoice. Rate schedule and typical methods of compensation will be evaluated on a per Work Order basis, and the CITY's commitment to pay for services proposed by a particular Work Order shall be at the CITY's sole discretion. ENGINEER understands that there is no minimum amount of work that the CITY is committing to pursuant to this Agreement or the aforementioned RFQ.

7.2 Except as may be addressed in the initiating Work Order, the compensation for services shall be invoiced by the ENGINEER and paid by the CITY once each month. Such invoices shall be due and payable upon receipt.

7.3 The ENGINEER agrees to allow full and open inspection of payroll records and expenditures in connection with hourly rate and cost plus fixed fee work assignments associated with each Work Order, upon request of the CITY. Notwithstanding the foregoing, the CITY's right to inspect, copy and audit shall not extend to the composition of the ENGINEER's rates and fees, percentage mark-ups or multipliers but shall apply only to their application to the applicable units.

## 8.0 PROHIBITION AGAINST CONTINGENT FEES

The ENGINEER warrants that it has not employed or retained any company or person, other than a bonafide employee working solely for the ENGINEER to solicit or secure this Agreement and that it has not paid or agreed to pay any persons, company, corporation, individual or firm, other than a bona fide employee working for the ENGINEER any fee, commission, percentage, gift, or any other consideration, contingent upon or resulting from the award or making of this Agreement.

9.0 **TERMINATION FOR CAUSE**

This Agreement may be terminated by either party with seven (7) days prior written notice, in the event of substantial failure to perform in accordance with the terms hereof by the other party through no fault of the terminating party. If this Agreement is terminated, the ENGINEER shall be paid in accordance with the provisions of outstanding Work Orders for all work performed up to the date of termination.

10.0 **SUSPENSION, CANCELLATION OR ABANDONMENT**

If the project described in any Work Order is suspended, canceled, or abandoned by the CITY, without affecting any other Work Order or this Agreement, the ENGINEER shall be given five (5) days prior written notice of such action and shall be compensated for professional services provided up to the date of suspension, cancellation or abandonment.

This Agreement shall be administered and interpreted under the laws of the State of Florida.

11.0 **TERMINATION FOR CONVENIENCE**

Either the CITY or the ENGINEER may terminate the Agreement at any time by giving written notice to the other of such termination and specifying the effective date of such termination at least thirty (30) days before said termination date. If the Agreement is terminated by the CITY as provided herein, the ENGINEER will be paid for services rendered through the date of termination.

12.0 **PUBLIC ENTITY CRIMES**

Pursuant to Florida Statute 287-132-133, effective July 1, 1989, the City of Clearwater, as a public entity, may not accept any proposal from, award any contract to, or transact any business in excess of the threshold amount provided in Section 287.017, F.S., for Category Two (currently $35,000) with any person or affiliate on the convicted vendor list for a period of 36 months from the date that person or affiliate was placed on the convicted vendor list unless that person of affiliate has been removed from the list pursuant to Section 287.133 (3)(f), F.S.

13.0 **SCRUTINIZED COMPANIES AND BUSINESS OPERATIONS WITH CUBA AND SYRIA**

The ENGINEER will be required to comply with Section 287.135, Florida Statutes, specifically to the following, attached hereto as Exhibit "B":

(a) The vendor, company, individual, principal, subsidiary, affiliate, or owner is aware of the requirements of section 287.135, Florida Statutes, regarding companies on the Scrutinized Companies with Activities in Sudan List, the Scrutinized Companies with Activities in the Iran Petroleum Energy Sector List, or engaging in business operations in Cuba and Syria; and

(b) The vendor, company, individual, principal, subsidiary, affiliate, or owner is eligible to participate in this solicitation and is not listed on either the Scrutinized Companies with Activities in Sudan List, the Scrutinized Companies with Activities in the Iran Petroleum Sector List, or engaged in business operations in Cuba and Syria; and

(c) Business Operations means, for purposes specifically related to Cuba or Syria, engaging in commerce in any form in Cuba or Syria, including, but not limited to, acquiring, developing, maintaining, owning, selling, possessing, leasing or operating equipment, facilities, personnel, products, services, personal property, real property, military equipment, or any other apparatus of business or commerce; and

(d) The vendor, company, individual, principal, subsidiary, affiliate, or owner will immediately notify the City of Clearwater in writing, no later than five (5) calendar days after any of its principals are placed on the Scrutinized Companies with Activities in Sudan List, the Scrutinized Companies with Activities in the Iran Petroleum Sector List, or engages in business operations in Cuba and Syria.

## 14.0 LIMITATION OF INDIVIDUAL LIABILITY AND WAIVER OF CONSEQUENTIAL DAMAGES

14.1 Neither the CITY nor the ENGINEER shall be liable to the other or shall make any claim for any incidental, indirect or consequential damages arising out of or connected to this Agreement or the performance of the services on this Project. This mutual waiver includes, but is not limited to, damages related to loss of use, loss of profits, loss of income, unrealized energy savings, diminution of property value or loss of reimbursement or credits from governmental or other agencies.

14.2 **PURSUANT TO FLORIDA STATUTES CHAPTER 558.0035 AN INDIVIDUAL EMPLOYEE OR AGENT MAY NOT BE HELD INDIVIDUALLY LIABLE FOR DAMAGES RESULTING FROM NEGLIGENCE.**

[A04-01313 /215821/1]

IN WITNESS WHEREOF, the parties hereto have made and executed this Agreement on the date and year first above written.

Stantec Consulting Services Inc.

By: _____
David A. Kemper, P.E.
Senior Principal

**WITNESS:**

By: _____
Hamid Sahebkar, P.E.
Principal

**Countersigned:**

_-georgencretekos_____
George N. Cretekos
Mayor

**CITY OF CLEARWATER**

By: _William B. Horne II_____
William B. Horne II
City Manager

**Approved as to form and correctness:**

_____
Assistant City Attorney

**ATTEST:**

By: _Rosemarie Call_____
Rosemarie Call
City Clerk

[A04-01313 /215821/1]

# EXHIBIT "A"
# INSURANCE REQUIREMENTS
# FOR
# AGREEMENTS AND CONTRACTS

In addition to any other insurance required by the RFQ, or bid documents, the Respondent shall, at its own cost and expense, acquire and maintain (and cause any contractors and/or subcontractors to acquire and maintain) during the term with the CITY, sufficient insurance to adequately protect the respective interest of the parties. Coverage shall be obtained with a carrier having an AM Best Rating of A-V11 or better. In addition, the CITY has the right to review the Respondent's deductible or self-insured retention and require that it be reduced or eliminated.

Specifically the Respondent must carry the following minimum types and amounts of insurance on an occurrence basis or in the case of coverage that cannot be obtained on an occurrence basis, then coverage can be obtained on a claims-made basis with a minimum three (3) year tail following the termination or expiration of this Agreement:

a. **Commercial General Liability Insurance** coverage in the minimum amount of $1,000,000 per occurrence and $2,000,000 general aggregate.
b. **Commercial Automobile Liability Insurance** coverage for any owned, non-owned, hired or borrowed automobile is required in the minimum amount of $1,000,000 (one million dollars) combined single limit.
c. Unless waived by the State of Florida, statutory **Workers' Compensation Insurance** coverage in accordance with the laws of the State of Florida, and **Employer's Liability Insurance** in the minimum amount of $100,000 each employee each accident, $100,000 each employee by disease and $500,000 aggregate by disease with benefits afforded under the laws of the State of Florida. Coverage should include Voluntary Compensation, Jones Act, and U.S. Longshoremen's and Harbor Worker's Act coverage where applicable. Coverage must be applicable to employees, contractors, subcontractors, and volunteers, if any.
d. **Professional Liability/Malpractice/Errors or Omissions Insurance** coverage appropriate for the type of business engaged in by the Respondent with minimum limits of $1,000,000 per claim. If a claims made form of coverage is provided, the retroactive date of coverage shall be no later than the inception date of claims made coverage, unless prior policy was extended indefinitely to cover prior acts. Coverage shall be extended beyond the policy year either by a supplemental extended reporting period (ERP) of as great a duration as available, and with no less coverage and with reinstated aggregate limits, or by requiring that any new policy provide a retroactive date no later than the inception date of claims made coverage.
e. If the Respondent is using its own property or the property of City in connection with the performance of its obligations under this Agreement, the **Property Insurance** on an "All Risks" basis with replacement cost coverage for property and equipment in the care, custody and control of others is required.

[A04-01313 /215821/1]

The above insurance limits may be achieved by a combination of primary and umbrella/excess liability policies.

**OTHER INSURANCE PROVISIONS:**
   a. The City is to be specifically included as an "Additional insured" on the Commercial Liability Insurance and Commercial Auto Liability, and named as a "Loss Payee" on Respondent's Property Insurance policy.
   b. Prior to the execution of this Agreement, and then annually upon the anniversary date(s) of the insurance policy's renewal date(s), the Respondent will furnish the City with a Certificate of Insurance evidencing the coverage set forth above and naming the City as an "Additional Insured." In addition, when requested in writing from the City, Respondent will provide the City with certified copies of all applicable policies. The address where such certificates and certified policies shall be sent or delivered is as follows:

   **City of Clearwater**
   **Engineering Department**
   **P.O. Box 4748**
   **Clearwater, FL  33758-4748**

   c. Respondent shall provide thirty (30) days written notice of any cancellation, non-renewal, termination, material change or reduction in coverage.
   d. Respondent's insurance as outlined above shall be primary and non-contributory coverage for Respondent's negligence.
   e. Respondent shall defend, indemnify, save and hold the City harmless from any and all claims, suits, judgments and liability for death, personal injury, bodily injury, or property damage arising directly or indirectly including legal fees, court costs, or other legal expenses.

The stipulated limits of coverage above shall not be construed as a limitation of any potential liability to the City, and failure to request evidence of this insurance shall not be construed as a waiver of Respondent's obligation to provide the insurance coverage specified.

[A04-01313 /215821/1]

# EXHIBIT "B"

## SCRUTINIZED COMPANIES AND BUSINESS OPERATIONS WITH CUBA AND SYRIA CERTIFICATION FORM

The affiant, by virtue of the signature below, certifies that:
1. The vendor, company, individual, principal, subsidiary, affiliate, or owner is aware of the requirements of section 287.135, Florida Statutes, regarding companies on the Scrutinized Companies with Activities in Sudan List, the Scrutinized Companies with Activities in the Iran Petroleum Energy Sector List, or engaging in business operations in Cuba and Syria; and
2. The vendor, company, individual, principal, subsidiary, affiliate, or owner is eligible to participate in this solicitation and is not listed on either the Scrutinized Companies with Activities in Sudan List, the Scrutinized Companies with Activities in the Iran Petroleum Sector List, or engaged in business operations in Cuba and Syria; and
3. Business Operations means, for purposes specifically related to Cuba or Syria, engaging in commerce in any form in Cuba or Syria, including, but not limited to, acquiring, developing, maintaining, owning, selling, possessing, leasing or operating equipment, facilities, personnel, products, services, personal property, real property, military equipment, or any other apparatus of business or commerce; and
4. If awarded the Contract (or Agreement), the vendor, company, individual, principal, subsidiary, affiliate, or owner will immediately notify the City of Clearwater in writing, no later than five (5) calendar days after any of its principals are placed on the Scrutinized Companies with Activities in Sudan List, the Scrutinized Companies with Activities in the Iran Petroleum Sector List, or engages in business operations in Cuba and Syria.

_____
Authorized Signature
David A. Kemper, P.E.
Printed Name
Senior Principal
Title
Stantec Consulting Services Inc.
Name of Entity/Corporation

STATE OF Florida
COUNTY OF Hillsborough
The foregoing instrument was acknowledged before me on this 23rd day of January, 2018, by David A Kemper (name of person whose signature is being notarized) as the Senior Principal (title) of Stantec Consulting Services Inc. (name of corporation/entity), personally known to me as described herein SELF, or produced a NA (type of identification) as identification, and who did/did not take an oath.

_____
Notary Public
Robin J. Law
Printed Name

My Commission Expires: October 11, 2021
NOTARY SEAL ABOVE

[A04-01313 /215821/1]